**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT, IN AND FOR LEE COUNTY, FLORIDA**

**PAUL WALSH,**

**Plaintiff,**

**v.**

**CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida,**

**Defendant.**
_______________________________________/

**CASE NO.: 25-CA-**
**FLA BAR NO.: 0739685**

## COMPLAINT

Plaintiff, PAUL WALSH, hereby sues Defendant, CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Whistleblower Act codified at Chapter 112, Florida Statutes.[1]

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

3. Additional claims will be added after administrative exhaustion is completed.

## THE PARTIES

4. At all times pertinent hereto, Plaintiff, PAUL WALSH, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to reporting and disclosing Defendant's malfeasance, misfeasance, and/or gross misconduct. Plaintiff was retaliated against after reporting Defendant's unlawful employment practices.

---

[1] Plaintiff intends to amend to add additional claims when administrative exhaustion is complete.

5. At all times pertinent hereto, Defendant CARMINE MARCENO in his official capacity as SHERIFF, LEE COUNTY, Florida, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

**CONDITIONS PRECEDENT**

6. Plaintiff worked for Defendant for more than 1,250 hours in the year immediately preceding his need for leave and was employed with Defendant for more than one year. Defendant employs more than 50 employees within a 75-mile radius.

7. Plaintiff has satisfied all other conditions precedent to bringing this action.

**STATEMENT OF THE ULTIMATE FACTS**

8. Plaintiff, a whistleblower, began his employment with Defendant on or about August 5, 2008, and held the position of Deputy Sheriff at the time of his wrongful termination on October 28, 2024.

9. Despite his stellar work performance and numerous accolades, such as promotion to Lieutenant in 2020 during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

10. The disparate treatment and retaliation came at the hands of specifically but not limited to Undersheriff John Holloway, Chief Matt Sands, Sheriff Carmine Marceno, and Risk Management Supervisor Taylor Thornton.

11. From 2018-2022, Plaintiff oversaw all criminal investigations within the Lee County School District as a Lieutenant with the Lee County Sheriff's Office ("LCSO") Youth Services Unit.

12. As part of Sheriff Marceno's Safe Kids Safe School initiative, Undersheriff Holloway issued a standing order to have punishment be administered for every school threat, substantiated or not, with the desire to boost Sheriff Marceno's re-election campaign and enhance the public perception of safety in schools.

13. On May 25, 2022, shortly after the Uvalde School Shooting on May 24, 2022, Plaintiff informed Undersheriff Holloway via a phone conversation through Commander Mike Miller, that there was no sufficient probable cause to arrest a juvenile of interest. Holloway asked Miller to ask Plaintiff if he was, "willing to bet his job on that?" to which Plaintiff responded that he would. This was an investigative interview with Plaintiff. Days later, Plaintiff was removed from overseeing criminal investigations in Lee County Schools.

14. During the month of October 2022, Plaintiff was put under an internal investigation based on allegations made by another Deputy. During this process, Plaintiff was not given a chance to disprove the allegations made against him and could not bring forth evidence or witnesses that supported his side of the story. Undersheriff Holloway appointed himself to oversee the investigation, and recommended termination. Sherrif Marceno disagreed, and instead, Holloway gave Plaintiff a double demotion (from Lieutenant to Deputy), a pay cut of $20,000, 6 months of probation, and reassignment to shift work in the road patrol bureau, an assignment that is typically reserved for new officers, not an officer with as much experience as Plaintiff. When Plaintiff requested a Loudermill hearing, Undersheriff Holloway added additional training to the punishment. Furthermore, the LCSO put Plaintiff's picture in the news and statements about the

situation without considering Plaintiff's evidence and contrary evidence supporting Plaintiff side of this matter.

15. Notably, in a comparable situation, Seargent Chase Bubley also faced allegations and went through an internal investigation. Afterwards, he was demoted only one rank, he did not have a pay loss and was immediately assigned to a specialty unit that worked from Monday to Friday. His situation was not broadcast to the media and his picture was not put on the news.

16. In June 2023, Plaintiff was served with a second internal investigation after Plaintiff discovered Deputies were leaving school unattended with students present. The investigation against the Plaintiff was based on showing another deputy's dereliction of duty. The Plaintiff received a two-week suspension, six months' probation, and after contesting via a Loudermill hearing the Plaintiff received additional training. Both Internal Affairs Investigators received promotions shortly after the investigations.

17. Notably, in another comparable situation, Deputy Ryan Chernoff also faced allegations and went through an internal investigation. Afterwards, he received a three-day suspension.

18. That same month, June 2023, Plaintiff filed for FMLA leave due to stress, anxiety, depression, and PTSD he was suffering from due to the recent events and his work as in the line of duty. Plaintiff's mental state had deteriorated to the point of interference with his job responsibilities, so he proceeded to follow the proper protocols, such as documentation from his doctor and having his doctor communicate with the Risk Management department at the Lee County Sheriff's Office. He was granted FMLA leave shortly after his request was filed.

19. In preparation for his return to duty, on or about September 13, 2023, Plaintiff filed a reasonable accommodation request to work in court operations to gradually transition back to

normal duty. Plaintiff followed up twice during that week, since there had been no acknowledgment of his request for accommodations. Plaintiff also filed a hostile work environment complaint against Undersheriff Holloway on that day, concerning Holloway's handling of Plaintiff's October internal investigation and the lack of due process given to Plaintiff throughout the investigation.

20. On or about September 18, 2023, Plaintiff received acknowledgment of his request for accommodations, but was denied several days later, with the stated reason that manpower was limited, and he was needed back on normal duty.

21. In October 2023, Plaintiff exhausted his FMLA leave and returned to work on light duty until December 2023. After returning to work, Plaintiff met with HR director Cari Turner to discuss reasonable accommodations that were available to him. Plaintiff was told that there was nothing HR could do, and that it was in the hands of the Undersheriff.

22. In early February 2024, Plaintiff requested to review his personnel file to ensure his requests were being documented. While looking through his file, Plaintiff noticed that his earlier requests for accommodation were not in his file, even though they should have been. Also, Plaintiff noticed his hostile work complaint was in his file, even though it should have been in Undersheriff Holloway's file since the complaint was written about him.

23. On March 1, 2024, Plaintiff sent an email to HR and asked for the status of the reasonable accommodation request and hostile work environment complaint. Plaintiff did not hear back until March 18, 2024, when he was informed that his "transfer request" was not possible, even though Plaintiff had asked for accommodations and not for a transfer. Furthermore, he was informed that the Undersheriff had personally addressed the hostile work environment complaint that Plaintiff had submitted, which is why it was in his file rather than the Undersheriff's.

24. On April 22, 2024, a news story was released about a Lee County Deputy who was arrested for DUI. The Lee County Sheriff's Office made a public statement explaining that the Deputy had a medical event due to anxiety, stress, depression, and PTSD, and that he had been reassigned to Court Operations for reasonable accommodation.

25. On April 23, 2024, Plaintiff contacted the HR director and Sheriff Marceno through email to ask why he could not receive reasonable accommodation, even though his medical documentation showed he also suffered from the same symptoms and was not allowed a reasonable accommodation.

26. On April 25, 2024, Plaintiff was contacted by his supervisor through a phone call and informed that he was being placed on administrative leave. After contacting HR, Plaintiff was notified by Chief Matt Sands that he was on leave pending a fitness for duty evaluation that was scheduled for May 6, 2024.

27. Plaintiff had a medical emergency on the scheduled day for the fitness for duty evaluation, which caused him to go to the emergency room and miss the appointment. It was eventually rescheduled, and Plaintiff completed his fitness for duty evaluation on May 30, 2024 with Dr. Mary Ellen Frazier.

28. During the fitness for duty evaluation, Plaintiff performed several tests and completed an interview with Dr. Frazier. Plaintiff's original diagnoses of moderate anxiety and stress were confirmed during this process.

29. In May 2024, Plaintiff forwarded a perjury complaint to LCSO's internal affairs department. The complaint was about the allegations made against Plaintiff in October of 2022 by a deputy and showed court records of the deputy giving a statement that was in direct contradiction to electronic evidence, which led the court to dismiss the case against Plaintiff. Even though

Plaintiff provided proof of his side of the story with the perjury complaint, LCSO refused to re-open the October 2022 complaint as this information would help clear Plaintiff's name. Plaintiff then sent the perjury information to the Sheriff, who refused to acknowledge or address the perjury complaint.

30. On June 19, 2024, Plaintiff received official confirmation that he was fit for duty with a suggested modification of three months of nonpatrol duty, according to both Dr. Frazier and Plaintiff's psychologist, Dr. Pooja Shastri. It was also recommended that a follow-up interview be conducted in September, 2024 with Dr. Frazier, and for Plaintiff to continue treatment with Dr. Shastri in the form of talk therapy. Plaintiff continued his visits with Dr. Shastri, making even further progress towards his recovery. However, even after considering the recommendations of two separate doctors, Plaintiff was offered either nonmodified patrol duty or to continue working with the records department, completing only clerical work.

31. On June 26, 2024, Plaintiff forwarded an email from Dr. Smallwood, who recommended Court Operations duty, stating that it would be best for Plaintiff's recovery and eventual transition back to normal operations. Plaintiff was again denied the opportunity to work at Court Operations and was told he could only transfer to patrol duty.

32. On June 27, 2024, Plaintiff had a meeting with Thornton and Sands. During that meeting, Sands stated that since Plaintiff was not going back to patrol, he had a maximum of 90 days on light patrol duty before a decision to either terminate or work as a full-time officer was made. During that meeting, Sands continued to speak down to Plaintiff, making statements that downplayed his situation, such as "go to work and quit the shenanigans," and to "stop milking FMLA." Plaintiff was provided a letter from LCSO Chief Counsel Abbi Smith stating, "the accommodation we have for you is records only."

33. On September 11, 2024, Plaintiff met with Dr. Frazier for a follow-up appointment, after which Dr. Frazier fully cleared him to return to normal duty.

34. On September 16, 2024, Plaintiff filed for intermittent FMLA, concerning Plaintiff's worsening condition of sleep apnea causing fatigue. Plaintiff provided documentation from Dr. Shastri and Dr. Lehmkuhl recommending day shift to help with recovery.

35. On September 25, 2024, Plaintiff was called into a meeting with Turner and Sands. During that meeting, he was informed that Sheriff Marceno wrote in his file that his doctors had written letters that labelled him as a danger to himself and the community. Plaintiff was confused, considering neither of his doctors had ever told him of a diagnosis that corroborated that statement, and in fact, had reported in his latest fitness test that he was cleared for full duty, including the use of a firearm on duty. Sands informed him that he needed to be medically cleared by October 25, 2024 to be able to return to duty and avoid termination, and that he should exhaust his sick and vacation hours for the next 30 days. Plaintiff informed him that he had already been medically cleared, but their response did not change.

36. On October 22, 2024, Plaintiff received an email from Thornton to remind him of the meeting on October 28, 2024, and that his appointment with the Lee County Sheriff's Office would be withdrawn if he was not medically cleared. Plaintiff again brought up Dr. Frazier's report that cleared him fully fit to return to duty as a law enforcement officer and Plaintiff's willingness to return to duty as a law enforcement officer, but did not receive any changes from Thorton.

37. On October 28, 2024, Plaintiff returned to work. During the month of leave, Plaintiff's access to his email, intranet, and facility entrance privileges were revoked. After being escorted into the LCSO facility, he was informed that his appointment with LCSO had been

terminated because he had not been cleared, despite his several emails that showed he had been cleared by his doctors.

38. Plaintiff was terminated after reporting wrongdoing within the Defendant.[2]

39. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## PUBLIC WHISTLEBLOWER RETALIATION

1. Paragraphs 1 through 37 above are incorporated herein by reference.

2. This count sets forth a claim against Defendant under §112.3187, et seq., Florida Statutes.

3. Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

4. As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that he reported. Plaintiff also disclosed this information when he participated in investigations, hearings, or other agency inquiries. Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

5. After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation his termination.

---

[2] As stated above, additional claims will be added after administrative exhaustion is complete.

6. Plaintiff's terminations and the refusal to reasonably accommodate Plaintiff were a direct adverse result of his reporting violations of rules, regulations or laws, and/or reporting malfeasance, misfeasance or gross misconduct, and/or participating in investigations, hearings or other inquiries, specified in part above.

7. The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against him for his "whistleblowing" activities.

8. As a direct and proximate result of the actions taken against her by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, emotional pain and suffering, loss of the capacity for the enjoyment of life and other tangible and intangible damages. These damages have occurred in the past, are occurring at present and will occur in the future. Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

## I. CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT,
IN AND FOR LEE COUNTY, FLORIDA

PAUL WALSH
Plaintiff

Case # ____________________
Judge ____________________

vs.
CARMINE MARCENO in his official capaci
Defendant

---

## II. AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

## III. TYPE OF CASE

(If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☒ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

1

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Marie A Mattox    Fla. Bar # 739685
Attorney or party    (Bar # if attorney)

Marie A Mattox    04/28/2025
(type or print name)    Date